WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ralph J. Valdez,<br><br>              Plaintiff,<br><br>v.<br><br>Michael J. Astrue, Commissioner of Social Security,<br><br>              Defendant. | No. CV 11-0706-TUC-BPV<br><br>**ORDER** |

Plaintiff applied for disability insurance benefits (DIB) under Title II of the Social Security Act (SSA), 42 U.S.C. §§ 416(i), 423(d), on January 17, 2008, alleging disability due to irritable bowel syndrome, brain tumor, chronic gastroesophageal reflux disease, sleep apnea, insomnia, and degenerative disc disease. Administrative Transcript (Tr.) 191-92, 239. The application was denied initially and on reconsideration, Tr. 93-94. Plaintiff appeared and testified at a hearing held on August 14, 2009, at which time the hearing was continued to permit Plaintiff to file an application for supplemental security income (SSI) under Title XVI of the SSA, 42 U.S.C. §§ 1382, 1382(c). (Supplemental Administrative Transcript (Supp. Tr. 729-40)) Plaintiff filed an SSI application on August 18, 2009, Tr. 199-202, and the application was escalated to the hearing level, Tr.

98, 311.

Plaintiff appeared with counsel and testified at a supplemental administrative hearing on February 25, 2010. Tr. 75-92. The ALJ issued a written decision on June 25, 2010, finding Plaintiff not disabled within the meaning of the SSA. Tr. 98-108. The Appeals Council denied review. Tr. 114. Thereafter, Plaintiff, through a new attorney, submitted additional arguments and evidence to the Appeals Council. On September 20, 2011, the ALJ's decision became the final decision for purposes of judicial review under 42 U.S.C. § 405(g) when the Appeals Council set aside its earlier denial of review and denied review again. Tr. 1.

Plaintiff now brings this action for review of the final decision of the Commissioner for Social Security pursuant to 42 U.S.C. §§ 405(g). The United States Magistrate Judge has received the written consent of both parties, and, accordingly, presides over this case pursuant to 28 U.S.C. § 636 (c) and Fed.R.Civ.P. 73.

After considering the record before the Court and the parties' briefing of the issues, the Court will reverse Defendant's decision and remand for further proceedings.

## I.  BACKGROUND

Plaintiff alleges an onset of disability of July 1, 2001. Plaintiff was born in 1959, and was 42 years old as of the date of the alleged onset of disability, and 46 years old on his date last insured. Plaintiff received a GED in 1978. Plaintiff worked most recently doing maintenance and custodial work. Plaintiff claims that because of his conditions he is in pain, uses the bathroom on average 6 times per day with pain, often has accidents, is

tired and gets migraines. Plaintiff takes Vicodin and ibuprofen for pain, lisinopril for hypertension, AcipHex for GERD, and Testim for low testosterone.

## II. STANDARD OF REVIEW

The Court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The court will set aside a denial of benefits only if the Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *See* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"); *Kail v. Heckler*, 722 F.2d 1496, 1497 (9th Cir. 1984) (citing *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *Thompson v. Schweiker*, 665 F.2d 936, 939 (9th Cir, 1982)); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "'Substantial evidence' means 'more than a scintilla,' *Perales*, 402 U.S. at 401, but 'less than a preponderance.'" *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)." *Smolen*, 80 F.3d at 1279.

## III. DISCUSSION

Whether a claimant is disabled is determined using a five-step evaluation process. To establish disability, the claimant must show (1) he has not worked since the alleged

disability onset date, (2) he has a severe impairment, and (3) his impairment meets or equals a listed impairment or (4) his residual functional capacity (RFC) precludes him from performing his past work. At step five, the Commissioner must show that the claimant is able to perform other work. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).

In her decision, the ALJ found that Plaintiff met the insured status requirements of the SSA through March 31, 2006. Tr. 100. The ALJ found that Plaintiff had not engaged in substantial gainful activity since July 1, 2001. Tr. 100. At step two, the ALJ found Plaintiff had irritable bowel syndrome, degenerative disc disease of the lumbar spine, and pituitary tumor, all "severe" impairments pursuant to the regulations. Tr. 100. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. Tr. 104.

The ALJ found Plaintiff had the RFC to perform light exertional level work with occasional postural functions and no work at unprotected heights, including the use of ladders. Tr. 104. At step four, the ALJ found Plaintiff was unable to perform his past relevant work as a maintenance worker/custodian. Tr. 107. The ALJ considered testimony by a vocational expert in making a determination that there are jobs in the national economy that Plaintiff could perform. Tr. 107-08. Therefore, the ALJ found Plaintiff was not disabled since July 1, 2001 through the date of decision Tr. 108.

Plaintiff argues that (1) the ALJ erroneously evaluated Valdez's recognized irritable bowel syndrome, and (2) Dr. Kaapuraala's opinion, submitted to the Appeals

Council, shows that substantial evidence does not support the ALJ's residual functional capacity assessment and adverse credibility finding.[1]

The Commissioner responds, arguing that (1) the ALJ appropriately evaluated Plaintiff's irritable bowel syndrome, and (2) even in light of the additional evidence submitted to the Appeals Council, the ALJ's decision is supported by substantial evidence.

A. <u>Step Four: Residual Functional Capacity Determination</u>

The ALJ found Plaintiff had the RFC to perform light exertional level work with occasional postural functions and no work at unprotected heights. Tr. 104. In doing so, the ALJ found Plaintiff's testimony was not fully credible, that none of Plaintiff's treating physicians had completed a medical source statement on the Plaintiff's ability to do work-related physical activities, that a State agency physician's assessment that there was no evidence of a severe somatic medical impairment was given some weight, that the lay witnesses' statements did not provide any persuasive information showing Plaintiff able to function to a lesser degree than described in the residual functional assessment. Tr. 104-06.

1. *Evaluation of Medical Source Opinions*

The ALJ acknowledged that Dr. Nestor, Plaintiff's primary care physician, stated that Plaintiff had been diagnosed with irritable bowel syndrome and chronic pain and would be absent from school occasionally. (*See* Tr. 101, citing Dr. Nestor's opinion at Tr.

---

[1] Since Plaintiff filed his opening brief, Defendant has remedied Plaintiff's additional point of error, that the administrative record does not include the transcript of the August 14, 2009 hearing.

484) In formulating Plaintiff's RFC, however, the ALJ stated that none of Plaintiff's treating physician's had completed a medical source-statement on Plaintiff's ability to do work-related physical activities. Tr. 106. The Plaintiff asserts that the ALJ's failure to state any reason for rejecting Dr. Nestor's opinion about missing school was error because the opinion was by any reasonable account a medical source statement about Plaintiff's ability to work. (Doc. 15, at 11)

"[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on 'clear and convincing' reasons." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citing *Lester v. Chater,* 81 F.3d 821, 830-31 (9th Cir. 1995)). Clear and convincing reasons are also required to reject a treating doctor's ultimate conclusions. *Lester*, 81 F.3d at 830 (citing *Embry v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). Where such an opinion is contradicted, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Carmickle*, 533 F.3d at 1164 (citing *Murray v. Heckler,* 722 F.2d 499, 502 (9th Cir. 1983)). When rejecting the opinion of a treating physician, the ALJ can meet this "burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). Here, because Dr. Nestor's opinion was contradicted by the opinions of medical consultants Dr. Dodson and Dr. Kattapong, s*ee* Tr. 408, 436, the ALJ must offer specific and legitimate reasons supported by substantial evidence to reject Dr. Nestor's opinion.

The Commissioner agreed that the ALJ acknowledged Dr. Nestor's opinion but

did not discount it. The Commissioner does not dispute that Dr. Nestor's opinion amounted to a medical source statement, but rather asserted that Dr. Nestor's opinion was not inconsistent with the RFC, and the ALJ reasonably inferred that Dr. Nestor's opinion would not result in work related absences that precluded working on a full-time basis. There is no basis in the record to support the Commissioner's assertions. Dr. Nestor's opinion is inconsistent with the RFC, because the RFC did not include any limitation regarding occasional absences. Neither is there any support in the record that the ALJ considered Dr. Nestor's opinion but made a finding that Dr. Nestor's opinion would not result in work related absences that precluded working on a full-time basis. This Court may not deny benefits on grounds not invoked by the Commissioner in denying benefits originally. *Pinto v. Massanari*, 249 F.3d 840, 847-48 (9th Cir. 2001). The Court finds that the ALJ erred by failing to identify specific and legitimate reasons supported by substantial evidence to reject Dr. Nestor's opinion.

    2. *Evaluation of Third Party Statements*

Plaintiff submits that the ALJ explicitly or implicitly recognized that Dr. Northington and Ms. Irey provided corroborating statements about Valdez's absences from school, but did not provide any specific or germane reasons for rejecting the statements.

Commissioner responds that while the ALJ discussed the opinions of the lay witnesses and found them unpersuasive, they were entitled to no weight in the first instance as opinions on issues reserved to the Commissioner.

Dr. Northington worked with Plaintiff's vocational rehabilitation counselor for the purpose of counseling Plaintiff on readiness to start his own business. Tr. 279. Dr. Northington stated that he met with Plaintiff over several years, beginning in 2001, and observed that Plaintiff had "continuous battles with his health and related mental health problems." Dr. Northington noted substantial physical problems including irritable bowel syndrome, a high degree of instability, and the ability on "good days" to maintain regular attendance. Tr. 279. Ultimately, Dr. Northington opined that he believed Plaintiff was "unemployable" because of his "physical and mental health issues he deals with day-to-day." Tr. 280.

Ms. Irey, a Disabled Student Resources Specialist at Pima Community College, worked with Plaintiff after he began attending Pima College in fall, 2001. Ms. Irey noted that, in addition to Plaintiff's gastrointestinal difficulties, Plaintiff struggled with back and neck pain along with migraines that made "for a difficult time in getting through all of his classes," however, "instructors were pretty good about working around his absences due to the major health issues he was having." Ms. Irey also noted that Plaintiff "was sick a vast majority of the time" and that although Plaintiff was "a dedicated student who worked hard and pushed through the pain" his "health issues [were] a tremendous barrier in being able to do what he would like to do." Tr. 282.

Though the Commissioner acknowledges that lay witness testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ must take into account, Commissioner argued that there was no reason for the ALJ to cite reasons for finding Dr. Northington and Ms. Irey not

credible, as their statements, like Dr. Nestor's opinion were consistent with the residual functional capacity. The Court disagrees.

Like Dr. Nestor's opinion, Dr. Northington's and Ms. Irey's opinions both corroborated Plaintiff's contention that he would be absent from work because he was absent from school due to health problems, and because of his difficulties attending vocational rehabilitation counseling due to continuous battles with his health. Even if Dr. Northington's opinion as to Plaintiff's "employability" is disregarded, Dr. Northington's observations from working with Plaintiff, that Plaintiff had the ability to maintain regular attendance on "good days," but manifested a "high degree of instability" and would only complete two or three rehabilitation sessions then fail to make the next appointment, corroborated Plaintiff's assertion that he would be absent from work due to health problems. There is no support for the ALJ's cursory conclusion that these opinions are "unpersuasive." The opinions are compelling evidence that Plaintiff was motivated, but unable to achieve attendance goals for college or vocational rehabilitation due to issues with his health. Absent any convincing explanation supported by substantial evidence for why the ALJ found these statements "unpersuasive," this Court finds that it was error to reject these statements.

The Commissioner argues that even if the ALJ erred by failing to state reasons for not finding the lay witnesses' opinions credible, any error was harmless, because the ALJ reasonably found Plaintiff was not credible and the same reasons for finding Plaintiff not credible applied to the lay witnesses. (Doc. 17, at 13) The ALJ is not required to discuss every witness's testimony on an individualized, witness-by-witness basis, and may point

to the germane reasons for rejecting testimony by one witness when rejecting similar testimony by a different witness. *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012); *see also Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (ALJ did not err by rejecting evidence based on the same reasons the ALJ discounted Plaintiff's allegations). In this case, however, the ALJ did not point to the same rationale used to discredit Plaintiff's testimony as a reason the ALJ rejected the lay witnesses' statements. The ALJ only stated that the statements did not provide any persuasive information. Because the ALJ did not reject the statements by pointing to the same rationale she applied to Plaintiff's testimony, this Court may not rely on such a rationale to affirm the Commissioner's decision. *See Pinto*, 249 F.3d at 847-48 (the district court may not affirm the ALJ's decision "on a ground that the [ALJ] did not invoke in making [her] decision[.]"); *Accord Varney v. Sec'y Health & Human Serv. (Varney II)*, 859 F.2d 1396, 1399 (9th Cir.1988) ("there may exist valid grounds on which to discredit a claimant's pain testimony.... But if grounds for such a finding exist, it is both reasonable and desirable to require the ALJ to articulate them in the original decision.") (internal quotes and citation omitted). Furthermore, even if the ALJ were not required to state that she was applying the same rationale to reject the lay witnesses' statements as she applied to reject the Plaintiff's credibility, the error could only be considered harmless if "the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witnesses' testimony.*" Molina*, 674 F.3d at 1117. It is not evident in this case that the same rationale used to discredit the Plaintiff's testimony would apply equally well to the lay witnesses. For example, the lay witnesses cannot be found to have only sought

minimal conservative treatment, one of the rationales used to find Plaintiff less than credible, as a basis for rejecting their testimony. Furthermore, though the Commissioner may have intended to argue that the lay witnesses' statements were based on Plaintiff's own statements which have been discredited, the ALJ did not make such a finding, and furthermore there is no support in the record for such a finding. Both lay witnesses' statements were based on the lay witnesses' personal experiences and interactions with Plaintiff in an educational setting, not on Plaintiff's self-reporting of his inability to maintain adequate attendance.

Finally, the ALJ's failure to properly reject both Dr. Nestor's opinion and the lay witnesses' statements was not harmless as to the ultimate issue of disability. An ALJ's error is harmless only where it is "inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1115 (quoting *Carmickle*, 533 F.3d at 1162; *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008); *Robbins v. Comm'r, Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006); *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006)). An ALJ's failure to consider testimony at issue cannot be deemed inconsequential to the ultimate nondisability determination when the testimony identifies limitations not considered by the ALJ, is uncontradicted by the record, and is highly probative of Plaintiff's ability to work in a competitive environment. See *Molina*, 674 F.3d at 1115 (discussing the Ninth Circuit's application of harmless error principles as explained in *Stout*, 454 F.3d 1050.) "In evaluating whether the claimant satisfies the disability criteria, the Commissioner must evaluate the claimant's 'ability to work on a sustained basis.'" *Lester*, 81 F.3d at 833 (quoting 20 C.F.R. § 404.1512(a)). Both the lay

witnesses' statements and Dr. Nestor's opinion are highly probative of Plaintiff's "ability to work on a sustained basis." The ALJ did not consider these statements in addressing Plaintiff's ability to work on a sustained basis, and these statements are uncontradicted by the record. Accordingly, the ALJ's rejection of these opinions and statements was not harmless.

### 3. *Evaluation of Plaintiff's Activities*

Plaintiff argues that Plaintiff's sedentary activities were erroneously cited as support for the ALJ's RFC assessment that Plaintiff could perform light work. Additionally, Plaintiff argues that the ALJ's analysis was unreasonable because the activity upon which the ALJ relied, Plaintiff's attendance at college, did not reflect sustained work activity, but rather showed that Plaintiff would miss school or work occasionally.

In discussing Plaintiff's symptoms, and whether they were credible, the ALJ commented that Plaintiff attended college, and, "in regard to the claimant's complaints of back pain" that Plaintiff was spending long hours on the computer, and, thus it could be inferred that Plaintiff was able to attend classes, prepare assignments, and take examination. The ALJ concluded that "[t]hese studies demonstrate the ability to concentrate, write, research, maintain a schedule and complete tasks on time." Tr. 106.

The ALJ did not err in relying on Plaintiff's ability to attend class, prepare assignments and take examinations as evidence of Plaintiff's ability to concentrate, write, research, maintain a schedule and complete tasks on time. Though Plaintiff asserts that the ALJ's analysis was unreasonable, the ALJ did not, as argued by Plaintiff, cite

- 12 -

Plaintiff's ability to complete college coursework as evidence that Plaintiff had the ability to perform light work as opposed to sedentary work.

The ALJ rejected Plaintiff's claims of disabling symptoms for a variety of reasons such as noncompliance, normal objective tests, minimal conservative treatment, failure to follow through with physical therapy, failure to seek mental health treatment despite stress-related diarrhea, and inconsistencies in the record. Tr. 105-06. Plaintiff did not argue that the ALJ's credibility analysis was erroneous, thus this Court does not reach that issue.

Plaintiff does argue that the ALJ's notation that Plaintiff's diarrhea was "stress related" as an "unclear notation," meaning possibly that stress caused diarrhea, in which case "the ALJ's [RFC] assessment should have included a limitation on stress," or that "[i]f the ALJ denied that Plaintiff had diarrhea because he was not treated for mental illness, this was unreasonable because an ALJ may not disregard exacerbations of that impairment caused by stress." (Doc. 15, at 15) The Court finds, however, that the ALJ cited this as an example of Plaintiff's failure to seek treatment of a condition that was causing exacerbation of his symptoms, an allowable consideration when assessing a claimant's credibility. *See Smolen,* 80 F.3d at 1284 (in assessing claimant's testimony the ALJ may consider an "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment"); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (same); *Tommasetti*, 533 F.3d at 1039 (in assessing a claimant's credibility, the ALJ properly inferred that Claimant's pain was not as all-disabling as reported when claimant did not seek an aggressive treatment program").

4. *Substantial Evidence*

After the ALJ's determination, Plaintiff submitted to the Appeals Council a June 2011 statement from treating physician Dr. Kaapuraala:

> . . . I reviewed the records from my patient, Ralph Valdez . . . from the Ortiz Community Health Center in 2006. At that time, he had not yet been diagnosed with the pituitary adenoma, but was experiencing significant fatigue that was attributed to low testosterone. In hindsight, this was likely a result of the pituitary adenoma. In my opinion, based on my review of the medical records and my treatment of Mr. Valdez, the significant fatigue he was experiencing precluded him from performing any full time employment prior to March 2006. In short, I do believe that Mr. Valdez was disabled prior to March 2006.

Tr. 719.

The Appeals Council determined that this information did not provide a basis for changing the ALJ's decision because the opinion was on a matter reserved for the Commissioner and, additionally, the opinion was inconsistent with the longitudinal record. Tr. 2.

Though not bound by a treating physician's opinion on the ultimate issue of disability, such opinions cannot be rejected without presenting clear and convincing reasons for doing so. *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) (quoting *Montijo v. Sec'y Health & Human Serv.*, 729 F.2d 599, 601 (9th Cir. 1984) (*per curiam*)); *see also Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (stating that "reasons for rejecting a treating doctor's credible opinion on disability are comparable to those required for rejecting a treating doctor's medical opinion"); *Lester v. Chater*, 81 F.3d at 830.

The Appeals Council did not identify in what manner it found this opinion to be

- 14 -

inconsistent with the longitudinal record, and thus this Court cannot easily assess this finding. The Court's review of the record, however, supports the Appeals Council's finding.

There is evidence in the record that Plaintiff reported symptoms of fatigue, daytime sleepiness, and decreased energy or lethargy, beginning in June, 2006 and continuing through July, 2009. Tr. 294, 512, 538-39, 557, 644-46. Plaintiff's symptoms were attributed to sleep apnea, which was itself determined to be explained by Plaintiff's tumor, Tr. 539, 541, and treated successfully to at least some extent, through the application of testosterone gel beginning in August, 2006, Tr. 646, *see also* Tr. 492 (reporting no fatigue at neurology clinic appointment on June 6, 2007), though Plaintiff's reports of fatigue continued even after testosterone treatment, Tr. 541, 587, 707. Though the severity of Plaintiff's fatigue cannot be comprehensively assessed by the medical record, it is evident that Plaintiff's fatigue, decreased energy, and daytime sleepiness were serious enough to merit the use of diagnostic sleep studies, treatment for Plaintiff's sleep apnea, and treatment of Plaintiff's low testosterone levels.

In fact, the ALJ noted, but did not discount, evidence that Plaintiff reported lethargy and decreased energy levels, was being followed by Dr. Newman for decreased testosterone levels, and was being treated with Testim, but that serum testosterone levels continued to go down. Tr. 102-03. Thus, the Appeals Council's statement that Dr. Kaapuraala's opinion was inconsistent with the longitudinal record was not supported by the agency's prior determination.

Dr. Kaapuraala gave his opinion of the cause and effect of Plaintiff's fatigue, prior

to 2006. The evidence in the record though, is that Plaintiff began seeking treatment for fatigue only in 2006. It is not clear how long Plaintiff was experiencing significant fatigue prior to his first reports of fatigue in June, 2006. Thus, in this manner, Dr. Kaapuraala's opinion is inconsistent with this Court's review of the medical record. It is not clear that this is what the Appeals Council meant by noting inconsistencies with the longitudinal record. A finding that there was no evidence of fatigue prior to 2006 could have been simply stated by the Appeals Council, but this is not what they stated.

Furthermore, the Appeals Council did not consider all of the factors set forth in 20 C.F.R. § 404.1527(c)(2)-(6) for evaluation of a medical source statement. Determination of the weight to afford Dr. Kaapuraala's opinion requires consideration of (1) the frequency of examination and the length, nature, and extent of the treatment relationship, (2) the evidence in support of Dr. Kaapuraala's opinion, (3) the consistency of the opinion and the record as a whole, (4) whether Dr. Kaapuraala is a specialist, and, (5) other factors that would support or contradict Dr. Kaapuraala's opinion. 20 C.F.R. § 404.1527(c)(2)-(6).

Though the Commissioner suggests that a retrospective opinion, such as Dr. Kaapuraala's may be given less weight when issued after the period at issue with no prior assessment of the claimant's limitations, (Doc. 17, at 17-18)(citing *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995)), this was not the basis for the Appeals Council's rejection of the opinion, and this Court may not deny benefits on grounds not invoked by the Commissioner in denying benefits originally. *See Pinto*, 249 F.3d at 847-48.

Because of the inconsistencies in the record and Dr. Kaapuraala's opinion, as well

as the Ninth Circuit's instruction that the Court will not credit the opinion as a matter of law, but will remand for its proper evaluation.

### IV. APPROPRIATE REMEDY ON REMAND

Plaintiff argues that the appropriate remedy is to remand the case for an award of benefits. The decision to remand for further development of the record or for an award of benefits is within the discretion of the Court. 42 U.S.C. § 405(g); *Harman v. Apfel*, 211 F.3d 1172, 1173-74 (9th Cir. 2000). "Where the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, we credit that opinion 'as a matter of law.'" *Lester*, 81 F.3d at 834 (quoting *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir. 1989); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("Because the ALJ failed to provide legally sufficient reasons for rejecting Benecke's testimony and her treating physicians' opinions, we credit the evidence as true.").

This Circuit has held that an action should be remanded for an award of benefits where the ALJ has failed to provide legally sufficient reasons for rejecting evidence, no outstanding issue remains that must be resolved before a determination of disability can be made, and it is clear from the record that the ALJ would be required to find the claimant disabled were the rejected evidence credited as true. *Smolen*, 80 F.3d at 1292.

Remand for further proceedings is appropriate in this case because even after applying the credit as true rule to improperly rejected evidence, it is not clear from the record that the ALJ would be required to find Plaintiff disabled. Here there are issues that require resolution before a finding of disability can be made.

The ALJ improperly rejected Dr. Nestor's opinion that Plaintiff would be absent from school occasionally due to the impairments of irritable bowel syndrome and chronic pain. The ALJ further improperly rejected the lay witness statement of Ms. Irey, that Plaintiff "was sick a vast majority of the time" and would have "a difficult time in getting through all of his classes," and Dr. Northington's opinion that Plaintiff's continuous battles with his health problems, including a high degree of instability and the ability only on "good days" to maintain regular attendance, would render Plaintiff unemployable. Finally, the Appeals Council improperly rejected the opinion of physician Dr. Kaapuraala that "the significant fatigue [Plaintiff] was experiencing precluded him from performing full time employment prior to March 2006."

When questioned at the administrative hearing, the vocational expert identified no jobs in response to the following question:

> Now let's assume based on his prior testimony and some indication from Dr. Newman in particular, he's got problems with lack of energy, overall fatigue and weakness, so that he's going to have difficulty reporting to work on a reliable basis. He's likely to miss more than two days a month. He may get into work and not be able to complete a day, so he's not able to work eight hours a day, five days a week consistently.

Tr. 90.

Though Dr. Nestor's opinion and the lay witnesses' statements are consistent with this hypothetical which establishes that Plaintiff is disabled, it is not clear from Dr. Nestor's opinion how many days a month Plaintiff would either miss work, or show up for work but not be able to complete a day. Additionally, Dr. Nestor's opinion was dated from 2005, but Plaintiff alleges an onset date in 2001. Thus, it is unclear from the record

- 18 -

that the ALJ would be required to find Plaintiff disabled for the entire claimed period of disability even if the evidence is credited as true. Similarly, though the lay witnesses' statements establish that Plaintiff's absences due to health problems significantly interfered with his attempt to return to school and to complete a vocational rehabilitation program as early as 2001, they do not establish how many days a month Plaintiff would miss work or have to leave work early.

Thus, there are still outstanding issues regarding Plaintiff's ability to perform sustained work and, assuming Plaintiff is found to be incapable of performing sustained work, a determination of a disability onset date. A remand for further proceedings would allow the ALJ to consider Dr. Nestor's opinion and the lay witnesses' statements, properly evaluate Dr. Kaapuraala's opinion, which the ALJ did not have the opportunity to assess, *see Harman v. Apfel*, 211 F.3d 1172, 1180 ("While we properly may consider the additional evidence presented to the Appeals Council in determining whether the Commissioner's denial of benefits is supported by substantial evidence, it is another matter to hold on the basis of evidence that the ALJ has had no opportunity to evaluate that Appellant is entitled to benefits as a matter of law."), and to obtain additional evidence if necessary to adequately develop the record in regard to a determination of Plaintiff's ability to work on a sustainable basis.

Accordingly,

//

//

//

IT IS ORDERED:

1. Defendant's decision denying benefits is reversed.

2. The case is remanded to Defendant for further proceedings consistent with this Order.

3. The Clerk is directed to enter judgment accordingly.

Dated this 10th day of July, 2012.

_____
Bernardo P. Velasco
United States Magistrate Judge